(Clark County, O., Probate Court.)
JOHN G. NAVE, Administrator, v. ELIZA J. MARSHALL et al.

(1). Parol evidence is inadmissible to alter, vary or contradict the consideration expressed in a deed, when the purpose or effect of such alteration, variation or contradiction would change the effect or legal operation of the deed.

(2). Where the deed has a consideration, expressed in it of one dollar, and none other is mentioned, or can be inferred from the language of the deed, such consideration is a valuable consideration, and for the purpose of determining the descent of the real estate conveyed, casts upon the grantee a title by purchase.

---

ROCKEL, J.

John G. Nave, administrator of Matilda Todd, filed his petition herein to sell certain real estate, therein described, to pay debts of decedent.

By leave of court Eliza J. Marshall et al. filed an answer and cross-petition alleging that they are the children of John H. Todd the deceased husband of said Matilda Todd by a former wife: that the premises in the petition described were held by said Matilda Todd under a deed of gift from their father John H. Todd: that said Matilda Todd died seized of other real estate, the title to which was not acquired by deed of gift from John H. Todd, they therefore ask that all the real estate of said Matilda Todd be sold, and after a proportionate share is taken out of the proceeds derived from the sale, of the real estate in the petition described, that the remainder of said proceeds be distributed to them as heirs at law of said John H. Todd.

A demurrer to this answer and cross-petition has been filed by the plaintiff, and the deeds conveying title to said Matilda Todd have been offered in evidence.

The questions upon which it is sought to have the opinion of the court, are, first—Do the deeds upon their face show that Matilda Todd acquired said real estate by deed of gift from John H. Todd. Second—If said

deeds upon their face fail to show that said Matilda Todd acquired said real estate by deed of gift from John H. Todd, can parol evidence be introduced to establish such fact?

The statutes under which these defendants claim, is section 4162, which reads as follows—

"When the relict of a deceased husband or wife shall die intestate, and without issue, possessed of any real estate or personal property, which came to such intestate from any former deceased husband or wife by deed of gift, devise or bequest, or under the provisions of section 4159, then such estate, real and personal, shall pass to and vest in the children of such deceased husband or wife, or their legal representatives of such children.   * * * *"

If said Matilda Todd acquired the real estate in the plaintiff's petition, by deed of gift, from John H. Todd, then the claim of these cross petitioners, should be sustained.

The deeds introduced in evidence show that on the 13th day of November 1858, Owen D. Garlough, "in consideration of the sum of $1 to him in hand paid by Matilda Todd, the receipt whereof is hereby acknowledged, does hereby bargain, sell and convey to the said Matilda Todd, her heirs and assigns forever, the following real estate: (Describing the premises in the petition described.) "Together with all the privileges and appurtenances at the same belonging: To have and to hold the same to the said Matilda Todd, her heirs and assigns forever. The grantor, his heirs and assigns hereby covenanting with the grantee, her heirs and assigns that the title so conveyed is clear, free and unincumbered by any act of the grantor herein."

On the same date, a deed with exactly the same recital is made by John H. Todd to Owen B. Garlough. It is claimed by the cross-petitioners that these two deeds are but one transaction. That as the law stood in 1858, a husband could not directly transfer his real estate to his wife, and that the deed made by John H. Todd to Owen B. Garlough, was made to him in trust that he would convey the premises therein described, to his wife Matilda Todd.

The deeds on their face do not show any trust, and further, that such a trust could be shown to control or direct the course of descent is a question not free from difficulty. The descent of real estate as determined by a number of judicial determinations, is controlled by the legal title. The legal title in the case at bar passed from John H. Todd to Owen Garlough, and from Owen Garlough, a stranger, to Matilda Todd.

John H. Todd, therefore, was not the immediate person from whom the legal title came to said Matilda Todd and in this view of the case, under the decisions of our supreme court, the same could not be considered as ancestral property coming from said John H. Todd, Brower v. Hunt, 18th Ohio St., 311; Patterson v. Lanson, 45th Ohio St, 77.

Under our statutee, as at common law, real estate is held to be acquired in two methods, to-wit—Descent, and purchase. At common law title was acquired by descent in but one way that is, where an heir at law inherited the real estate from an ancestor.

The inclusion of title by gift or bequest was an addition made by statute. The distinction between these two methods of acquiring title to real estate was, that he first was acquired by operation of law, and the latter by act of the parties themselves.

A deed of gift at common law, was held to transfer a title by purchase to the grantee because it took an act of the grantee, to perfect such a conveyance, in that, in order to secure its validity, there must be an acceptance of the gift. Likewise, it was held that real estate coming by bequest, gave to the devisee a title by purchase, because it required action on his part to perfect the devise.

These two methods of acquiring and owning title to real estate as now recognized by our statutes, are well defined by Judge White in Brower v. Hunt, 18th Ohio St., 311. Here it is said "All estates are by law divided into two classes, and the line or order

of succession is to be determined by the class to which they belong. The first section creates, defines, and prescribes the course of the first class, appropriately called ancestral. All the estates not included in the first class necessarily belong to the second, and are non-ancestral in their character, and pass under the second section. It rather seems that the courts, when considering whether a title is held by purchase or descent for the purpose of determining its ancestral qualities, look with more favor upon title by purchase. It seems that they have been very technical in applying rules of common law in determining this question.

What will constitute a deed of gift, such as will cast upon the grantee a title by descent as distinguished from a title by purchase, the authorities fail to disclose.

It is claimed that the reason for making title acquired by deed of gift, to descend the same as title acquired by inheritance, is because the property came from a certain ancestor and should be enjoyed or go back to persons of his blood.

While this may have been the object of the classification, yet it is not always carried into effect. There are several noticeable cases in Ohio, in which the consideration for the purchase was either ancestral property, or furnished directly by an ancestor.

The first case that will be noticed is that of Rrower v. Hunt, 18th Ohio St., 311. Here a man devised real estate in certain proportions to his children. The land was allotted or divided to the children as directed in the will. Afterwards two of the children concluded to exchange tracts. The consideration mentioned in the deed was a monied consideration, but in fact the contract of land was the consideration for the other tract, and the court held that these devisees by this sale, had cast upon each other a title by purchase and that they did not hold by descent. Here it will be seen that no new consideration passed, and that ancestral property was solely and alone the consideration. But the court reasons that these devisees did not hold or have cast upon them the title to their several tracts of land by operation of law, but by their own acts. This case is followed in the 6 C. C. Reports 571. The same rule I understand, was applied by our common pleas court in a case of Harris v. Harris, of quite recent date.

In this case the ancestor had directed the executor to sell the real estate and divide the proceeds among certain devisees. These devisees by agreement among themselves, concluded to take certain tracts of the real estate, instead of the proceeds arising from the sale. To carry out this agreement, the executor transfered the property to a third person, and such third person made deeds to the various devisees for the tracts of property agreed upon.

The deeds stated a monied consideration, when the fact was that no money whatever was used in the transaction, but each devisee only gave a receipt for the amount of his share of the proceeds of such lands under the will of the decedent. It was here held that the title acquired by these devisees under this arrangement, was one of purchase, and not of descent.

The most important case in which our court has held that the mere fact that an ancestor furnished the consideration for the purchase of property, does not make it a deed of gift, is that of Patterson v. Lamson 45th Ohio St., page 77.

In this case a father desiring to give his daughter a present upon her marriage, purchased a certain piece of real estate. The deed was made to his daughter and delivered to him and by him placed upon the records in the recorder's office. On the eve of her wedding, he delivered the deed to her. The deed stated that she had paid the sum of $6000.00 for the real estate, while the facts were that she never paid anything for the real estate, and that all the consideration therefor was paid by her father. Yet the court holds that she did not acquire this property by deed of gift, but held it under a title by purchase.

In all of these cases, the person re-

ceiving the title, parted with no new consideration. The consideration was either furnished directly by an ancestor, or was exclusively made up of ancestral property

Whether a valid conveyance of real estate in Ohio, must be founded upon either a good or valuable consideration, has never been determined by our supreme court. There seems to be no good reason why a person may not make a valid conveyance of his real estate if he so chooses, without the receipt of either a good or valuable consideration. The ownership of property implies the free power of disposition. Upon the subject under consideration, the following is taken from Chancellor Kent. "A good consideration is founded upon natural love and affection between near relations by blood; (h) but a valuable one is founded on something deemed valuable in a pecuniary sense, as money, goods, services; and to these must be added, though depending on a different idea, marriage. There are some deeds, to the validity of which a consideration need not have been stated.

"It was not required at common law, in feoffments, fines, and leases, in consideration of the fealty and homage incident to every such conveyance. The law raised a consideration from the tenure itself, and the solemnity of the act of conveyance.

"The necessity of a consideration came from the courts of equity, where it was held requisite to raise a use; and when uses were introduced at law, the courts of law adopted the same idea, and held that a consideration was necessary to the validity of a deed, of bargain and sale.

"It has been long the settled law, that a consideration, expressed or proved, was necessary to give effect to a modern conveyance to uses. (a) The consideration need not be expressed in the deed, but it must exist. The mention of the consideration in a deed was to prevent a resulting trust, but it is not prima facie evidence of the amount, and may be varied by parol proof.

"It is sufficient if the deed purports to be for money received or value received, without mentioning the certainty of the sum; and if any sum is mentioned, the samllest in amount or value will be sufficient to raise the use." 4th Kent, 465.

In reference to conveyances without consideration, Pomeroy uses the following language—"It was a doctrine of the English equity, in pursuance of the ancient principle, that the use followed or was raised by the consideration; that when land was conveyed by deed without any consideraticn, and without any use or trust being declared, a trust resulted to the feoffer, the feoffer taking cnly the naked legal title. This doctrine, however, had no application to conveyances which operated under the statute of uses, since a use was raised in favor of the mediate grantee by a 'bargain and sale' between strangers, and by a "covenant to stand seised" between relatives.

"If the doctrine had any existence under the conveyancing system, of this country, so that a trust should result to the grantor from the absence of a consideration, it can only be where the deed simply contains words of grant or transfer, and does not recite nor imply any consideration, and does not in the habendum clause or elsewhere declare any use in favcr of the grantee, and the conveyance is not in fact intended as a gift.

"In all the instances belonging to this first form of resulting trust, the intention that the donee is not tc enjoy the beneficial interest, but that a trust is to result, or the ccntrary intention must appear expressly or by implication from the terms of the instrument itself by which the property is conveyed.

"If the instrument is a will, then no extrinsic evidence is ever admissible to show the testator's meaning, nor even to show a mistake. If the instrument is a deed, no extrinsic evidence of the donor's intention is admissible, unless fraud or mistake is alleged and shown.

"If therefore there is in fact no consideration, but the deed recites a pecuniary consideration, even merely nominal as paid by the granţee, this

[COPYRIGHT. 1899, BY CARL G. JAHN.]

statement raises a conclusive presumption of an intention that the grantee is to take the beneficial estate, and destroys the possibility of a trust resulting to the grantor, and no extrinsic evidence would be admitted to contradict the recital and to show that there is in fact no consideration—except in a case of fraud or mistake." § 1035 and 1036, Pomeroy Esq.

The deeds introduced in evidence, are both deeds of bargain and sale, and have a stated valuable consideration. The mere fact that the consideration is a small one, does not affect the character of the transaction as between the parties themselves or their privies. If this were a case in which it is sought to impeach a deed, because a conveyance was made to defraud creditors, then I have no doubt the court would look into the amount of the consideration: and where this amount stated in the deed, is such as to show that it is only nominal, the conveyance will be set aside.

But where no creditors are interested, and the only parties to be affected are those to whom the grantor was under no legal obligation, the amount of the consideration cannot affect the character of the transaction.

It seems to me therefore, that the want of a consideration, passing between a grantor and a grantee, will not alone constitute the conveyance a deed of gift. But there must also be an intention upon the part of the grantor to cast upon the grantee a title by descent as distinguished from a title by purchase.

The face of the deeds show Matilda Todd to be the owner of the premises in the petition described by purchase. This brings us to the second question, that is, whether parol evidence may be introduced to show that it was the intention of John H. Todd through Owen Garlough to confer upon Matilda Todd, a title by purchase to the real estate in the premises described. It is a general rule of law that a parol evidence is inadmissible to vary or contradict an instrument in writing. What parol evidence may be introduced to affect the consideration expressed in the deed, was exhaustively examined by the court in McCrea v. Purmort, 16 Wen., 460.

There it is said "Looking at the strong and overwhelming balance of authority, as collectible from the decisions of American courts, the claim in question even as between the immediate parties, comes down to the rank of prima facie evidence, except for the purpose of giving effect to the operative words of the conveyance. To that end and that alone, it is conclusive. Such effect I have no doubt has been long ascribed to it by conveyances of real estate."

In Kimball v. Walker, 30 Ill., 511, it is said: "Perhaps the rule is well laid down in the bank of Mount Pleasant, 14th Peters, 206, where the court said that parol evidence is inadmissible to contradict or substantially vary the legal import of a written instrument. Now the legal import of a deed of bargain and sale, is simply that there is no resulting trust in the grantor, and he is estopped from ever thereafter denying that the deed was executed for the uses and purposes mentioned in it, but not that the money was paid him. This is the reasonable rule, and ought to be applicable to all writings whether under seal or not. There legal import can not be varied by parol, but other facts recited in them may be."

The following is from the case of Van Rensallaer v. Kearney, 11 How. 325. "A deed of this character (quit claim) imports to convey and is understood to convey nothing more than the interest or estate of which the grantor is seized or possessed at the time, and does not operate to pass or bind an interest not then in existence. The bargain between the parties proceeds upon this view: and the consideration is regulated in conformity with it. If otherwise, and the vendee has contracted for a particular estate, or for an estate in fee, he must take the precaution to secure himself by the proper covenant of title.

But this principle is applicable to a deed of bargain and sale by release or quit claim in the strict and proper sense of that species of contract.

And therefore, if the deed bears on its face evidence that the grantors intended to convey, and the grantee expected to become invested with, an estate of particular description or quality, or that the bargain had proceeded upon that footing between the parties, then although it may not contain any covenants of title in the technical sense of the term, still in legal operation and effect the instrument will be as binding upon the grantor and those claiming under him, in respect to the estate described, as if the final covenant to that effect had been inserted."

In the case of Bowman v. Taylor, Lord Denmen, Ch. J. observed, that, "As to the doctrine laid down in Co. Litt. 352 b, that a recital doth not conclude, because it is no direct affirmation, the authority is a very great one; but still, if a party has by his deed recited a specific fact though introduced by a "whereas" it seems to me impossible to say that he shall not be bound by his own assertion so made, under seal."

And Taunton, J., remarked, in the same case, that the law of estoppel is not so unjust or absurd, as it has been too much the custom to represent.

The principle is, that when a man has entered into a solemn engagement by deed under his hand and seal as to certain facts, he shall not be permitted to deny any matter which he has asserted.

Again in Stone v. Wise, 71 Conn., 214, "Without multiplying authority on a point rendered clear by numerous cases, it is sufficient to state, that where a party has solemnly admitted a fact by deed under his hand, and seal, he is estopped not only from disputing the deed in itself, but every fact it recites."

In Goodspeed v. Fuller, 46 Me. 147, "The only effect of a consideration clause on a deed, is to estop the grantor from alleging that it was executed without consideration and to prevent a resulting trust in the grantor. For every other purpose, it may be varied or explained by parol proof."

In Bassett v. Bassett, 55 Me., 130, it is said: "The law is now well settled that notwithstanding a deed acknowledged the receipt of a consideration, the grantor may show that none was in fact received, when his purpose is to recover the consideration, and not defeat the operation of the deed."

So in Gardner v. Leightfoot, 32 N. W. R., 511 it is said—

"The only consideration made in the conveyance is $1. This it will be conceded is only nominal. That parol evidence is admissible to show that the consideration named in a conveyance, is other or different, will be conceded: But a very different question is prevented when it is proposed to show by parol that there was no consideration whatever, for the purpose of rendering the conveyance void."

These decisions seem to draw the line very clearly that parol evidence is inadmissable to alter, vary, or contradict the consideration expressed in a deed, when the purpose or effect of such alteration, variation, or contradiction, would be to change the effect or legal operation of the deed.

They also show that the rule is more strictly applied against the grantor, which would include those claiming under him, than against strangers to the instrument.

Now reverting again to the case of Patterson v. Lamson 45th Ohio St., 77. We will quote from this decision at some length. While bearing in mind that in the Patterson case the consideration was for a considerable amount and the person from whom it was sought to establish that the deed of gift came from, never held the legal title to the property, and that in the case at bar, the consideration was $1, and the legal title at one time, was in the person from whom it is sought to establish that the deed of gift came to the intestate, the reasoning of the court is very applicable. On page 87 it is said—"The controversy which deeply engages the discussion in this case, arises from the necessity of showing facts outside of this deed, which are expected to impart to it the essential qualities of the deed of gift from Lamson to Lillian."

Now follows a sentence which would

seem to decide the case at bar.   The court continuing says—"Counsel are practically in accord that oral evidence is not admissible to contradict the material recitals of the deed for the purpose of fixing its character as a deed of gift from an ancestor.   The defendants in error maintain that the recital in said deed which we seek to contradict, is not of the character which the law forbids contradiction on; and it is not necessary for us to contradict any recital in said deed. The claim is that the recital, in consideration of $6000, received to our full satisfaction of Lillian E. Hoegel, is not contradicted by showing that the consideration paid, was the money of Lamson.

"That the deed is silent upon this fact.   The right to show by oral evidence, that the consideration was in fact furnished by another than the grantee named in the deed, is predicated upon the legal proposition, that recitals in a deed are estoppels only when they are of the essence of the contract; that is, where, unless the facts recited exist, the contract, it will be presumed, would not have been made; and upon the assumed fact that neither party to this deed intended to determine the course of descent the property should follow; that they were not negotiating with a view to such contingency.

"In this connection counsel asserts that:   The idea that any recital contained therein would thereafter determine the line of descent never entered their heads, except so far as a transfer of title from one to the other would control the same &c.

"In this we are left entirely to conjecture.   How may we know that this form of transfer of title to Lillian was not deliberately adopted by the ancestor?"

So in the case at bar, how may we know but what it was the deliberate intention of John H. Todd to confer upon his wife a title by purchase to the premises in the petition decribed.

And in the language of the court in the Patterson case: "While we are left entirely to conjecture, it seems most reasonable that we should rest our conclusion upon the natural and legal hypothesis that the parties at least intended to do what they did, and do it as they did.   It seems to us a rather preconstruction of this deed that it is silent upon the question of who furnished the consideration furnished in it.   But one inference can be gathered from it, and that is that Lillian is the purchaser of the property, and paid the named consideration for it. It is this recital which, more than any other in the deed, imparts to it the character of the deed of purchase as distinguished from the deed of gift from one whose name nowhere appears in it.   Here is a deed which upon its face justifies but one construction; that it is a deed of purchase from Sked to Lillian Hoegel.

"To say that it is not contradicting its recital, to prove that in fact it is a deed of gift from one who is not named in it the grantee, is a theory which we are not prepared to adopt. That the consideration clause of the deed may not, in any case, be contradicted, we are not called upon to declare.   In many cases—in fact in most cases—the considerations recited in a deed have little or nothing to do with the effect of a deed, or with the title conveyed.   But in the case at bar, how can it be said, that these recitals have no relation to the effect of the deed or the nature of the title conveyed?   While it may be said that the quality of real estate, as ancestral or non-ancestral property, is never inherent in the estate itself, it does not follow that the character of a deed, as a deed of purchase or a deed of gift, had no relation to the quality of the estate as ancestral property or otherwise.

"The character of a deed as a deed of purchase or a deed of gift was determined at the time it was made and delivered.   How can it be said that the form of the deed, in respect to its recitals of consideration, can have no effect upon the kind of estate conveyed, when the one question which has so long protracted the contention in this case, is, whether the deed was a deed of gift or purchase?

"Our conclusion upon this question

is, that in determining whether an instrument for the conveyance of land is a deed of purchase or a deed of gift, we may look to its recitals, and that a recital in such a deed that the conveyance by the named grantor is made in consideration of a named sum of money, received by such grantor from the grantee, is of the essence of the deed, and so far concerns its operation and effect as it is not competent to show, by proof, that in fact such deed was a deed of gift from a person not named in the deed and that the named consideration was in fact paid by him."

I am not aware that the case at bar might be distinguishable from the case just quoted from, and that our supreme court might hold that Matilda Todd from the fact that the consideration made was but $1, and that her husband John H. Todd at one time held the legal title to the premises, that she might have held a title by deed of gift. But to do so, would be to hold that the recital of a valuable consideration, which has always been the distinguishing feature of a title by purchase from a title by a deed of gift, is not supported by the mentioning of a $1 consideration.

The court would need to hold that when such a consideration was mentioned in the deed, that it was not the intention of the party to cast upon the grantee a title by deed of purchase. It is very difficult for me to see how the court could declare such to be the intention of the parties, when the legal import of such intention placed by them in writing, carries out a contradictory intention.

In a recent case arising in Miami county, our circuit court passed upon the admissibility of parol evidence to show the character of the consideration of a deed. The case was entitled Teague v. Weis, and I believe has not been reported. In this case the fourth item of Samuel Stephen's will was as follows—

"At the death of my wife, I give and bequeath to my daughters Mary Lott, Rachael Garrison, Hoke Weiss and Lucy Teague, each one-fourth part of my estate that may be left

unconsumed in the support of my wife as aforesaid. And it is my will that my said children divide the estate into four equal, equitable parts, each taking a part. But should they be unable to agree, then in that case, to choose two or three judicious men to make the division and allotment for them, and in case any of said children die, leaving no child or children, then in that case, their portion shall revert back to my heirs."

During the lifetime of the widow, she and her four daughters entered into a written agreement whereby in consideration of $40 per year, agreed to be paid to her by each of her daughters, the mother agreed to convey the real estate of the testator to the four daughters, by deed of quit claim, and thereupon, the mother and Rachael Garrison and Hoke Weiss executed a quit claim deed to Lucy Teague. Similar deeds were made to the other daughters, each of the deeds recited a consideration of $2100.00, and no other.

In the common pleas court, against the objection of parties, evidence was introduced showing that no money consideration passed from either sister to the other, and that the only consideration was the conveyance by each to the other. This was held to be error, the court in the opinions say— "We think it sufficient to say, that parol evidence is inadmissible to show a different consideration from that expressed in a deed for the purpose of giving a different effect to the operative words of a deed. Patterson v. Lamson, 45 Ohio St., 77; McCrea v. Purmout, 16 Wend., 460, 30 Am. Decis. 103, and note. Parol testimony is not admissible to vary the kind of consideration mentioned in a deed for land. Wright JJ. in Holmes v. Sullivan, 14 Bull., 167. It follows therefore that the court erred in receiving the parol evidence, the purpose of which was to change the effect of the deed, and for this error the judgment will be reversed and the cause remanded."

This case ought to be decisive upon the admissibility of parol evidence in the case at bar.

It is proposed in the case under con-

sideration to show what purports to be a deed with a valuable consideration is in fact a deed of gift. In the case of Burrage v. Beardsley, 16 O., 468, it was held that parol evidence could not be introduced to show that a deed reciting a valuable consideration, was in fact a deed upon a good consideration of love and affection. This rule is laid down in Taylor on Evidence, sec. 1040.

* * * *

The only way in which this court can accede to the claim of the cross-petitioner is to hold that the deeds from John H. Todd to Owen Garlough, and from Owen Garlough to Matilda Todd, form but one transaction, and that Matilda Todd held title immediately from John H. Todd; and further, that a consideration of one dollar expressed in the deed is not a valuable consideration, but only nominal, and therefore it should be presumed to be a deed of gift, and cast upon Matilda Todd a title by descent, and not by purchase within the meaning of the statute of descent and distribution.

I am in doubt whether the decisions will justify the holding that Matilda Todd held title to the premises directly by deed of gift from John H. Todd, and if she did not, the cross petitioner must fail.

In Brown v. Hunt, 18 Ohio St,. 311, it was held—"The title to real estate which must come to an intestate by devise, or deed of gift from an ancestor to continue ancestral property, is the title under which the intestate immediately held"

This case is cited with approved in Patterson v. Lamson, 45 Ohio St., 91.

In the case of Hershizer v. Florence, 39 Ohio St., 516, 525, where the wife and her husband held an undivided interest in some real estate, and for the purpose of division, between themselves, they conveyed it to a trustee to be reconveyed to them, in severalty, it was held: 'That the wife by the conveyance took a new title, and that the rule laid down in Tabler v. Wiseman, 2 Ohio St., 207, and in McBain v. McBain, 15 Ohio St., 337, applicable to partition proceedings,

that no new title is created thereby, does not apply to the deliberate conveyance of the parties."

The case of Nesbit v. Trindle, 64 Ind., 183, is important. In Indiana there is a statute preventing a husband or wife from alienating lands derived from either, during a second marriage. A wife inherited lands from her husband, a few days prior to her second marriage she conveyed the lands for a consideration of $100.00. She retained possession. On the same day after her marriage the lands were reconveyed to her. It was held that she acquired a new title to the property, other than by descent from her husband, and that she held the property by purchase. This case also holds that parol evidence is inadmissible to change or vary the effect of the deed. In the case at bar accepting the view of the cross-petitioners that Owen Garlough was a mere trustee, yet he held the legal title, and he transferred that legal title to Matilda Todd. Between John H. Todd and Owen Garlough there may have been a trust. But there was no trust between Owen Garlough and Matilda Todd. If John H. Todd held any title or interest in the premises after he made the conveyance to Owen Garlough, it was nothing more than an equitable title, and upon Owen Garlough, executing the trust imposed on him, conveying the premises to Matilda Todd, this equitable title, if such there was, followed the legal title, and she became the holder of both. If this were true, the legal title would control. Thus in Patterson v. Lamson, 45 Ohio St., 77 the court say: "In determining whether real estate is ancestral or otherwise, the course of descent is to be controlled by the legal title. When a legal estate in realty and an equitable one coming through different persons, unite in the same holder, the course of the legal estate and not of the equitable, determines whether the holder of both does or does not have an ancestral estate."

Matilda Todd surely did not receive the legal title to the real estate in the premises described from John H. Todd, and if the legal title controls

and must be held directly from the ancestor, the real estate under consideration is not ancestral.

Upon the proposition that the court should hold these deeds to be deeds of gift, because they contain a one dollar consideration, I find no authority. The validity of a contract does not depend upon the amount of the consideration, unless it is sought to impeach it for fraud. A one dollar consideration in a deed has been held to be nominal when used with the recital of other good considerations. 13 Ohio, 543. Holmes v. Sullivan 14 Bul., 167.

John H. Todd was under no legal obligation to preserve this property for an inheritance to these cross-petitioners. No one inherits anything by any inherent right of his own. He gets only what the law says he may receive. John H. Todd had a perfect right to convey the property to Matilda Todd and cast upon her a title by purchase.

By the ordinary use of the English language, as generally used in the law of conveyancing, he has done so. He has deliberately chosen his words under his own seal and signature. By what right can we say he did not intend that which his own words say he did intend?

In Brower v. Hunt, 18 Ohio St., 339, it is said—

"The ancestral principle found in our former and present statutes of descent is not a preference of the blood of the ancestor to the exclusion of the blood of the intestate, but a preference of those of the kindred of the intestate who are of the blood of the ancestor, and where preference is given to the blood of either, to the exclusion of the other, it is given to the blood of the intestate."

So if I had doubts in the case at bar, I would decide in favor of the plaintiff, for that will give a preference to the blood of the intestate.

I confess the case has been one of considerable difficulty, but I believe the decisions of the courts warrant my conlusions, that Matilda Todd held the premises by deed of purchase,

and that parol evidence is inadmissible to show otherwise.

O. S. Olinger, for Plaintiff.

T. J. Pringle & Geo. A. Beard, for Cross Petitioner.